**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 22-cv-60361-CIV-ALTMAN/Hunt**

**STEPHANIE EDMUNDS**,

     *Plaintiff,*

*v.*

**ASURION, LLC**, *et al.*,

     *Defendants.*

_____/

**<u>ORDER DISMISSING COMPLAINT</u>**

Our Plaintiff, Stephanie Edmunds, used to work for the Defendant, "Asurion." While employed there, Edmunds says, a supervisor discriminated against her because of her race. When she complained to human resources, Edmunds was treated hostilely and, ultimately, fired. Edmunds has here sued a handful of Asurion-related entities, advancing claims of race discrimination and retaliation—which the Defendants have now moved to dismiss. After careful review, we **DISMISS** Edmunds's amended complaint.

**PROCEDURAL HISTORY**

In February of 2022, Edmunds sued Asurion, LLC, alleging race discrimination under Title VII of the Civil Rights Act. *See* Complaint [ECF No. 1]. Edmunds claimed that a supervisor named Cindy "made a racial comment to [her] in Chat, in March of 2017." *Id.* at 5. When Edmunds entered an "initial complaint of Racial Discrimination," she was "retaliated against and treated unfairly[.]" *Ibid.* Edmunds "complain[ed] to Human Resources on many occasions" about this retaliation and unfair treatment—which is when her "work place became very hostile and [she] was again retaliated [sic] against by being terminated for complaining[.]" *Ibid.* In her Complaint, Edmunds said that she filed a

Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") in "March, 2019," and that the EEOC issued a Notice of Right to Sue letter on November 23, 2021. *Ibid.*

Asurion, LLC, moved to dismiss the Complaint for five different reasons: *First*, it claimed that Edmunds "sued the wrong entity," and that she "failed to exhaust her administrative remedies," because "she did not file a Charge of Discrimination against Asurion, LLC. Instead, she filed it against Asurion Insurance Services, Inc., which is a legally separate and distinct entity[.]" First Motion to Dismiss (the "First MTD") [ECF No. 12] at 1. *Second*, it said that "the factual basis for the claims asserted in the lawsuit (and the [EEOC] Charge) purportedly occurred more than five years ago and thus are barred by the statute of limitations." *Ibid. Third*, it argued that the Complaint's "facts do not meet the *Iqbal/Twombly* pleading standard[.]" *Ibid. Fourth*, it insisted that the "Plaintiff failed to disclose her claims against either Asurion entity[11] in her pending Chapter 13 bankruptcy despite her affirmative obligation to do so. . . . Accordingly, she is judicially estopped from asserting those previously disclaimed legal theories in this lawsuit." *Id.* at 1–2. *Fifth*, it contended that "the lawsuit should be dismissed for insufficient service of process because, at Plaintiff's request and direction, the Complaint and summons were served on an individual with no authority to accept service of process on Asurion's behalf." *Id.* at 3.

Edmunds initially responded to the First MTD—but then changed tack and amended her Complaint.[2] *See* Original Response in Opposition [ECF No. 16]; Amended Complaint (the "Am. Compl.") [ECF No. 24]. In her Amended Complaint, she named *three* Defendants (rather than just

---

[1] This case involves three different entities (or purported entities), all with some variation of the "Asurion" name.

[2] We denied the First MTD as moot in light of the Amended Complaint. *See* Paperless Order [ECF No. 13].

one)—all Asurion affiliates,[3] which she's identified as "Asurion, LLC," "Asurion Insurance Services," and "Asurion ET, AL." *See generally* Am. Compl. All but one of the Amended Complaint's factual allegations are essentially lifted from the original Complaint. The one main exception is that the Amended Complaint gives us the full name of Edmunds's supervisor, Cindy Sandoval. *Id.* at 5. Otherwise, as before, Edmunds alleges only that Sandoval "made a racial comment to [her] in Chat, in March of 2017," after which Edmunds submitted an "initial complaint of Racial Discrimination[.]" *Ibid.* When Edmunds complained, she was "retaliated against and treated unfairly" in some unknown way. *Ibid.* Edmunds "complain[ed] to Human Resources on many occasions" about this retaliation and unfair treatment—which is when her "work place became very hostile and [she] was again retailated [sic] against by being terminated for complaining[.]" *Ibid.* As in her initial Complaint, Edmunds alleges that she filed a charge with the EEOC in "March, 2019," and that the EEOC issued a Notice of Right to Sue letter on November 23, 2021. *Ibid.*

The Defendants again moved to dismiss, advancing four of the same arguments from the First MTD: improper service; statute of limitations (and administrative exhaustion); judicial estoppel; and failure to state a claim. *See* Second Motion to Dismiss (the "Second MTD") [ECF No. 27]. Edmunds filed her Response [ECF No. 36], and the Defendants submitted their Reply [ECF No. 45]. After careful review, we now **GRANT in part** and **DENY in part** the Second MTD.

## THE LAW

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this

---

[3] Edmunds doesn't tell us which allegations relate to each Asurion entity. So, we'll generally refer to these entities collectively as "the Defendants," but we'll identify them by their specific names when the distinction matters.

"plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid.* (citing *Twombly*, 550 U.S. at 556). This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ibid.* (quoting *Twombly*, 550 U.S. at 555). "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Priv. Health Care Sys., Inc.*, 520 F.3d 1308, 1309–10 (11th Cir. 2008) (quoting *Twombly*, 550 U.S. at 545). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. On a motion to dismiss, "the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016).

Edmunds has filed her complaint *pro se*. A "*pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erikson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Saunders v. Duke*, 766 F.3d 1262, 1266 (11th Cir. 2014) ("We also construe the complaint liberally because it was filed *pro se*."); *cf.* FED. R. CIV. P. 8(f) ("All pleadings shall be so construed as to do substantial justice."). Still, while we treat *pro se* litigants with some leniency, "this leniency does not give a court license to serve as *de facto* counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action." *Schwarz v. Ga. Composite Med. Bd.*, 2021 WL 4519893, at *2 (11th. Cir. 2021) (quoting *GJR Inv., Inc. v. Cnty. of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998)). The requirement that "a complaint must contain sufficient facts, accepted as true, to state a claim for relief that is plausible on its face . . . also applies to *pro se* complaints." *Wells v. Miller*, 652 F. App'x 874, 875 (11th Cir. 2016); *see also Saunders*, 766 F.3d at 1266 (recognizing that *Twombly* and *Iqbal* apply to *pro se* complaints).

## ANALYSIS

### I.    Asurion ET, AL

As one might have guessed, one of the Defendants Edmunds has sued—"Asurion ET, AL"—"is not an actual legal entity." Second MTD at 2; *see also id.* at 14 (referring to "this legally non-existent party"). Edmunds never really responds to this problem directly. Instead, she proffers that "Asurion Insurance Services, and Asurion ET, AL . . . are entities of the Defendant Asurion LLC." Response at 1. We therefore accept the Defendants' (essentially unrebutted) representation that Asurion ET, AL doesn't exist. *Cf. Sappupo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority."); *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of an issue [forfeits] it."); *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented . . . are deemed [forfeited]."); *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) ("While we read briefs filed by *pro se* litigants liberally, issues not briefed on appeal by a *pro se* litigant are deemed abandoned[.]" (cleaned up and first citing *Horsley v. Feldt*, 304 F.3d 1125, 1131 n.1 (11th Cir. 2002); and then citing *Lorisme v. I.N.S.*, 129 F.3d 1441, 1444 n.3 (11th Cir. 1997)).

And we think it goes without saying that Edmunds cannot sue a non-existent entity. *See, e.g., Taylor v. Piggly Wiggly of Bay Minette, Ala.*, 2012 WL 3555576, at *3 (S.D. Ala. Aug. 16, 2012) ("There is plainly no possibility the plaintiffs can establish a cause of action against a defendant that ceased to exist decades before the conduct made the subject of the suit."); *Anglin v. FL Fontainebleau Miami*, 2022 WL 17344893, at *1 (S.D. Fla. Nov. 30, 2022) (Martinez, J.) (dismissing a complaint because, among other infirmities, the plaintiff sued a defendant that "appear[ed] to be a nonexistent entity that is not the intended defendant to this lawsuit"). We therefore **DISMISS with prejudice** all claims against Asurion ET, AL for the simple reason that it doesn't exist.

## II.      Shotgun Pleading

We turn, next, to an issue the Defendants *didn't* raise. To comply with federal pleading standards, a complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The Federal Rules also require plaintiffs to "state [their] claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances." FED. R. CIV. P. 10(b). As the Eleventh Circuit has explained, a complaint is a shotgun pleading if it:

> (1) contains multiple counts where each count adopts the allegations of all preceding counts; (2) is replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action; (3) fails to separate into a different count each cause of action; or (4) asserts multiple claims against multiple defendants without specifying which defendant is responsible for which act.

*Embree v. Wyndham Worldwide Corp.*, 779 F. App'x 658, 662 (11th Cir. 2019). All shotgun pleadings share two characteristics. *See Dorman v. Palm Beach Cnty.*, 2020 WL 2078527, at *1 (S.D. Fla. Apr. 30, 2020) (Altman, J.). *First*, they "fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015). *Second*, they "waste scarce judicial resources, inexorably broaden the scope of discovery, wreak havoc on appellate court dockets, and undermine the public's respect for the courts." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018) (cleaned up).

"As [the Eleventh Circuit] ha[s] stated on several occasions . . . if, in the face of a shotgun complaint, the defendant does not move the district court to require a more definite statement, the court, in the exercise of its inherent power, *must* intervene sua sponte and order a repleader." *Byrne v. Nezhat*, 261 F.3d 1075, 1133 (11th Cir. 2001), *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008) (emphasis added). "Discharging this duty ensures that the issues get defined at the earliest stages of litigation. The district court should strike the complaint and instruct counsel

to replead the case—if counsel could in good faith make the representations required by Fed. R. Civ. P. 11(b)." *Id.* at 1133 n.113 (cleaned up); *see also Magluta v. Samples*, 256 F.3d 1282, 1285 (11th Cir. 2001) (vacating an order of dismissal and instructing the district court to "enter an order striking the complaint and require a repleading of all claims in a complaint that respects the requirements of Rule 8"); *Anderson v. Dist. Bd. of Trs. of Cent. Florida Cmty. Coll.*, 77 F.3d 364, 367 (11th Cir. 1996) ("On examining those pleadings, the court, acting *sua sponte*, should have struck the plaintiff's complaint, and the defendants' answer, and instructed plaintiff's counsel to file a more definite statement.").

The Amended Complaint is a shotgun pleading in at least two ways. *First*, the Amended Complaint "is replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action[.]" *Embree*, 779 F. App'x at 662. Edmunds alleges, for example, that "[her] Constitutional Civil rights were violated," that she was "subject to continued retaliation," that "a supervisor [ ] made a racial comment to [her]," that her "work place became very hostile," and that she was "retaliated against and treated unfairly[.]" Am. Compl. at 5. But Edmunds offers *no* specific allegations to support these conclusory legal assertions. She hasn't, for instance, told us *how* her workplace was hostile, *why* her treatment was unfair, or even *who* retaliated against her. Indeed, in saying that a supervisor directed a racist comment towards her, she never deigns to mention what that comment was.

*Second*, Edmunds appears to "assert[ ] multiple claims against multiple defendants without specifying which defendant is responsible for which act." *Embree*, 779 F. App'x at 662. Although she's sued three Defendants, she doesn't explain which Defendant is responsible for which harm. For instance, although she complains about "a supervisor that made a racial comment to [her]," she doesn't say which Defendant that supervisor worked for. *See generally* Am. Compl. She, in fact, never even tells us which Defendant *she* worked for—or (for that matter) which Defendant terminated her. She has,

in other words, "fail[ed] . . . to give the defendants adequate notice of the claims against them[.]" *Weiland*, 792 F.3d at 1323.

In short, the Amended Complaint is deeply flawed, and it "fails . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Ibid.* Allowing Edmunds to proceed in this way would "waste scarce judicial resources, inexorably broaden the scope of discovery, wreak havoc on appellate court dockets, and undermine the public's respect for the courts." *Vibe Micro, Inc.*, 878 F.3d at 1295 (cleaned up). We therefore **STRIKE** the Amended Complaint and direct Edmunds to **replead** it in conformity with this Order.[4]

### III.   Service of Process

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987). In other words, "before a court may exercise personal jurisdiction over a defendant, there must be . . . a basis for the defendant's amenability to service of summons. Absent consent, this means there must be authorization for service of summons on the defendant." *Ibid.*; *see also Aetna Bus. Credit, Inc. v. Universal Decor & Interior Design, Inc.*, 635 F.2d 434, 435 (5th Cir. 1981) ("When service of process is challenged, [the plaintiff] must bear the burden of establishing its validity.");[5] *Reeves v. Wilbanks*, 542 F. App'x 742, 746 (11th Cir. 2013) (same). "[T]he service requirement is not satisfied merely because the defendant is aware that he has been named in a lawsuit or has received a copy of the summons and the complaint." *United States v. Ligas*, 549 F.3d 497, 500 (7th Cir. 2008). Instead, we "require a 'careful determin[ation] that service of process was in substantial compliance with the formal requirement of the Federal Rules.'" *Winston v. Walsh*, 829 F. App'x 448,

---

[4] To be clear, Edmunds may replead *only* the claims we dismiss *without prejudice* later in this Order.

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

451 (11th Cir. 2020) (quoting *Prewitt Enter., Inc. v. Org. of Petroleum Exporting Countries*, 353 F.3d 916, 925 n.14 (11th Cir. 2003)).

And, on the issue of service, the Federal Rules of Civil Procedure provide as follows:

> Unless federal law provides otherwise or the defendant's waiver has been filed, a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name must be served
>
> (1) in a judicial district of the United States:
>> (A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or
>> (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant[.]

FED. R. CIV. P. 4(h)(1). And Rule 4(e)(1), in turn, allows a plaintiff to serve by:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2) doing any of the following:
>
>> (A) delivering a copy of the summons and of the complaint to the individual personally;
>> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Edmunds tells us, *see* Response at 2, that she tried to serve the Defendants in Tennessee, where a plaintiff can serve "by delivering a copy of the summons and of the complaint to a partner or managing agent of the partnership or to an officer or managing agent of the association, or to an agent authorized by appointment or by law to receive service on behalf of the partnership or association." TENN. R. CIV. P. 4.04(3). The docket shows that the Clerk of Court issued three summonses in our case: one for Asurion, LLC, *see* Summons Issued [ECF No. 7]; and one each for Asurion ET, AL, and

Asurion Insurance Services, *see* Summonses Issued [ECF No. 34].[6] But there are only *two* Returns of Service on the docket: one for Asurion, LLC, *see* Service Affidavit [ECF No. 9]; and one for Asurion ET, AL, *see* Service Affidavit [ECF No. 52]. Edmunds, in sum, *never* filed a return of service for Asurion Insurance Services. *See generally* Docket. That's a dispositive problem because the Federal Rules required her to serve each Defendant "within 90 days after the complaint is filed." FED. R. CIV. P. 4(m). And the same Rule tells us that, absent timely service, we "*must* dismiss the action without prejudice against that defendant or order that service be made[.]" *Ibid* (emphasis added). Because more than 90 days have elapsed here, we **DISMISS** *without prejudice* Edmunds's claims against Asurion Insurance Services.[7]

Edmunds also failed to properly serve Asurion, LLC. The first Return of Service shows that a U.S. Marshal Service Deputy tried to serve Asurion, LLC, on March 7, 2022, by delivering the summons to someone named Tyree Bass at 648 Grassmere Park, Nashville, TN 37211. *See* Return of Service [ECF No. 9] at 2. That's a problem because, according to the Defendants' lawyer, "Asurion, LLC's principal place of business was not located at 648 Grassmere Park, Nashville, TN 37211 on March 7, 2022," and Tyree Bass "is not a partner, managing agent, officer, or authorized agent of Asurion, LLC, and therefore is not authorized to accept service on its behalf." Declaration of Flynne M. Dowdy (the "Dowdy Decl.") [ECF No. 12-6] ¶¶ 3–4; *see also* TENN. R. CIV. P. 4.04(3) (allowing service on an LLC "by delivering a copy of the summons and of the complaint to a *partner or managing*

---

[6] In the Second MTD, the Defendants insist that "[t]he Court's docket shows that Plaintiff has not obtained a summons and has not served Asurion Insurance or 'Asurion, ET, AL' since she filed her Amended Complaint on April 26, 2022." Second MTD at 6. But that's not entirely true: Edmunds (as we've said) *did* obtain summonses for all three Defendants. *See* Summonses Issued [ECF Nos. 7, 34]. Whether she properly *served* the Defendants is, as we're about to see, a different story.

[7] Edmunds named Asurion Insurance Services as a defendant back on April 25, 2022. *See generally* Am. Compl. Service was therefore due by July 25, 2022—more than 18 months ago. And Edmunds never asked us for more time to serve. *See generally* Docket.

*agent* of the partnership or to an *officer or managing agent* of the association, or to *an agent authorized by appointment or by law* to receive service on behalf of the partnership or association" (emphases added)).

We recognize that "litigants should be entitled to rely on the court officers and United States Marshals to effect proper service, and should not be penalized for failure to effect service where such failure is not due to fault on the litigant's part." *Fowler v. Jones*, 899 F.2d 1088, 1095 (11th Cir. 1990). In normal circumstances, we wouldn't fault Edmunds for the Marshal's decision to serve someone who, it turns out, *wasn't* authorized to accept service. But Edmunds *did* direct[8] the Marshal's Service to serve Asurion, LLC, at the Grassmere Park address, which Asurion now says (in a sworn declaration) wasn't its "principal place of business on March 7, 2022." Dowdy Decl. ¶ 4. It's thus no surprise that the Marshal was unable to find, at that address, *anyone* who could validly accept service on behalf of Asurion, LLC. And that, of course, *is* Edmunds's fault.

In any event, by challenging the propriety of service, the Defendants have shifted "the burden of establishing its validity" to Edmunds. *See Reeves*, 542 F. App'x at 746 (citing *Aetna Bus. Credit, Inc.*, 635 F.2d at 435 ("When service of process is challenged, the party on whose behalf it is made must bear the burden of establishing its validity.")). And Edmunds has failed to meet her burden. In her Response, Edmunds insists only that "[t]he Complaint and Summons was served to the Defendants Legal Representative address that the Defendant gave to The U.S. Equal Employment Opportunity Commission (EEOC), which is the same address listed publicly on the Asurion.com company website." Response at 2 (errors in original). And we can see what Edmunds is talking about: On the Right-to-Sue Letter, "Respondent's Representative" is listed as:

> Deadrick L. Thaxton, Staff Counsel
> ASURION, LLC
> Attention: Legal
> 648 Grassmere Park
> Nashville, TN 37211.

---

[8] *See* Response at 2 (Edmunds admitting that she provided the service address to the Marshal).

Right-to-Sue Letter at 1. But, according to the sworn declaration from Asurion's counsel—which Edmunds hasn't contested with any other evidence—that was no longer Asurion, LLC's address by the time Edmunds attempted service in March of 2022. *See* Dowdy Decl. ¶ 4 (attesting that the Grassmere Park address wasn't Asurion, LLC's "principal place of business on March 7, 2022"). Edmunds's mistake was innocent enough and (we think) made in good faith—but good faith isn't enough. *See, e.g.*, *Burgos v. Sand Canyon Corp*, 813 F. App'x 363, 366 (11th Cir. 2020) ("[Burgos] mailed the process and complaint to the wrong address. When Sand Canyon moved to set aside the default judgment in state court, Burgos submitted another affidavit, admitting that he made an error when he handwrote the address but asserting that he typed the address correctly in a separate area of the envelope. However, the district court found that Burgos did not present evidence to support this assertion, and he fails to do so on appeal as well." (cleaned up)); *Kleiman v. Wright*, 2020 WL 5632654, at *22 (S.D. Fla. Sept. 21, 2020) (Bloom, J.) ("[T]he record reflects that Mr. Conrad, who was not authorized to act on W&K's behalf, received the Notice of Listing without any accompanying statement of claim in a shared mailbox, which mailbox address was not listed as W&K's registered agent's address. Thus, the mere fact that one document from one of the two Australian lawsuits was ultimately received in a mailbox linked to Mr. Kleiman and W&K (at the wrong address) and collected by a non-W&K affiliated individual does not dictate that W&K was served in October 2013.").

But here's the thing: Even if we were inclined to let Edmunds off the hook for initially relying on the out-of-date address, she's now been on notice since March 28, 2022, that she'd served the wrong address. *See* First MTD at 12 ("Additionally, on March 7, 2022 (the date of purported service), Asurion, LLC's principle [sic] place of business was not located at 648 Grassmere Park, Nashville, TN (where the summons was served). Plaintiff provided the incorrect address for service of process to the U.S. Marshal (Docket No. 7) and is, therefore, responsible for the unperfected service." (cleaned up)). But she's made no attempt to re-serve Asurion, LLC, at its proper address in the nearly two years

since she became aware of the problem. *See generally* Docket. We won't forgive a mistake Edmunds

has made absolutely *no* effort to fix. *See, e.g., Brown v. Davis*, 656 F. App'x 920, 921 (11th Cir. 2016)

("Brown does not show that the court erred in dismissing Lyons for lack of service. The United States

Marshals Service was unable to serve Lyons because he no longer resided at the address provided by

Brown. However, Brown did not remedy the service or ask for a continuance to do so. Brown was on

notice that Lyons had not been served almost three years before the trial and about one month after

service on Lyons failed. Accordingly, we affirm the dismissal of Lyons from the suit.").

Edmunds's separate claim that she "emailed Amended Complaint to the Defendants

Attorneys on file," Response at 2 (errors in original), is simply irrelevant because she hasn't suggested

(much less shown) that those lawyers were authorized to accept service. As the Supreme Court has

explained, "before a court may exercise personal jurisdiction over a defendant, there must be . . . a

basis for the defendant's amenability to service of summons. Absent consent, this means there must

be *authorization* for service of summons on the defendant." *Omni Cap. Int'l*, 484 U.S. at 104 (emphasis

added); *see also Hall v. Haynes*, 319 S.W. 3d 564, 572 (Tenn. 2010) ("[P]ersonal service may also be

effected upon an individual via a *properly authorized* agent. In any event, however, actual notice of the

lawsuit is not a substitute for service of process when the Rules of Civil Procedure so require." (cleaned

up & emphasis added)). And the mere existence of an attorney-client relationship is, without more,

insufficient to establish that authorization. *See Strax Ams., Inc. v. Tech 21 Licensing Ltd.*, 2017 WL

5953117, at *2 (S.D. Fla. Mar. 23, 2017) (Scola, J.) ("The Defendants' counsel does not have

authorization to receive process merely because he is an attorney or even because, in that capacity, he

sent the cease-and-desist letter at issue in this action."). Edmunds hasn't offered *any evidence* to support

her view that email service to defense counsel was sufficient—and it was unquestionably her burden

to prove that. *See Reeves v. Wilbanks*, 542 F. App'x 742, 746 (11th Cir. 2013) ("In his view, Mr. Gomez

had been appointed by the Board of Education to accept service on its behalf and, therefore, he was

also authorized to accept service on behalf of employees of the Gwinnett County school system. The burden is on Mr. Reeves to prove Mr. Gomez was so authorized.").

Because Edmunds has failed to show that she served Asurion, LLC, personally—or that counsel for Asurion, LLC, agreed to accept service via email—we **GRANT** the Second MTD as to Asurion, LLC, and **DISMISS** Edmunds's claims against that Defendant for lack of timely (and proper) service.

For what it's worth, Edmunds probably hasn't served our other two Defendants (Asurion Insurance Services and Asurion ET, AL), either. In the Second MTD, the Defendants say that "[t]he Court's docket shows that Plaintiff has not obtained a summons and has not served Asurion Insurance or 'Asurion, ET, AL' since she filed her Amended Complaint on April 26, 2022." Second MTD at 6. The first half of that claim is wrong: The docket shows that summonses for Asurion Insurance Services and Asurion ET, AL were issued on May 25, 2022. *See* Summonses Issued [ECF No. 34]. But the second half—that Edmunds "has not served" either of these entities—is *probably* right. After all, the summonses to Asurion Insurance Services and Asurion ET, AL bear the same incorrect address (648 Grassmere Park) Edmunds used to serve Asurion, LLC. *See id.* at 1, 2. Again, that address doesn't seem to be a valid address for any of the Asurion entities. So, even though we've already dismissed Edmunds's claims against Asurion Insurance Services and Asurion ET, AL, we now separately **DISMISS** all claims against those two Defendants because Edmunds has failed to serve a "partner or managing agent . . . an officer or managing agent . . . or [ ] an agent authorized by appointment or by law to receive service[.]" TENN. R. CIV. P. 4.04(3).

## IV.    Failure to Exhaust Administrative Remedies and Statute of Limitations

To recap: We've stricken the Amended Complaint as a shotgun pleading; we've dismissed the claims against Asurion ET, AL because it isn't a real entity; and we've dismissed Edmunds's claims against all three Defendants because she never properly served them. Unfortunately, Edmunds has

also failed to exhaust her administrative remedies, which has caused her to miss the applicable statute of limitations.

"It's axiomatic that an employee must exhaust administrative remedies before filing a complaint of discrimination under Title VII of the Civil Rights Act of 1964." *Harrell v. City of Opa-Locka*, 2022 WL 898565, at *11 (S.D. Fla. Mar. 28, 2022) (Altman, J.) (quoting *Stamper v. Duval Cnty. Sch. Bd.*, 863 F.3d 1336, 1340 (11th Cir. 2017) (cleaned up)). "The first step down the path to exhaustion is filing a timely charge of discrimination with the EEOC." *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001). "Under Title VII, in cases where the EEOC does not file suit or obtain a conciliation agreement, the EEOC 'shall so notify the person aggrieved and *within 90 days* after the giving of such notice a civil action may be brought against the respondent named in the charge . . . by the person claiming to be aggrieved.'" *Zillyette v. Cap. One Fin. Corp.*, 179 F.3d 1337, 1339 (11th Cir. 1999) (quoting 42 U.S.C. § 2000e–5(f)(1) (emphasis added)). The plaintiff bears the "burden of establishing that he filed his Complaint within ninety days of his receipt of the EEOC's right-to-sue letter." *Green v. Union Foundry Co.*, 281 F.3d 1229, 1234 (11th Cir. 2002) (cleaned up).

The 90-day limitation period begins to run "upon notification of the aggrieved party," which occurs "upon actual receipt of the suit letter[.]" *Zillyette*, 179 F.3d at 1339. The Eleventh Circuit, however, doesn't "employ a rule determining when a complainant has [*actually*] received notice of the right to sue. Rather, we have imposed upon complainants some minimum responsibility for an orderly and expeditious resolution of their claims, and we have expressed concern over enabling complainants to enjoy a manipulable open-ended time extension which could render the statutory minimum meaningless." *Kerr v. McDonald's Corp.*, 427 F.3d 947, 952 (11th Cir. 2005) (cleaned up). The upshot is that our Circuit "has continued to approach these issues on a case-by-case basis to fashion a fair and reasonable rule for the circumstances of each case[.]" *Zillyette*, 179 F.3d at 1341 (cleaned up).

In our case, three facts are undisputed: (1) Edmunds filed an EEOC Charge against Asurion Insurance Services only, *see* Charge of Discrimination (the "EEOC Charge") [ECF No. 27-2]; (2) the EEOC issued Edmunds a Right-to-Sue Letter on November 23, 2021, *see* Right-to-Sue Letter [ECF No. 27-3] at 1; and (3) Edmunds filed this lawsuit on February 16, 2022, *see* Complaint—85 days after the Right-to-Sue Letter issued. In other words, Edmunds did *not* file an EEOC Charge against Asurion, LLC, *or* Asurion ET, AL. *See* EEOC Charge (naming only Asurion Insurance Services).

As this summation should make plain, Edmunds's claims against Asurion, LLC, and Asurion ET, AL are barred because, as to these two Defendants, she failed to exhaust her administrative remedies. Edmunds, as we've seen, only filed an EEOC Charge against Asurion Insurance Services. Again, "an employee *must* exhaust administrative remedies before filing a complaint of discrimination under Title VII of the Civil Rights Act of 1964." *Harrell*, 2022 WL 898565, at *11 (emphasis added); *see also Hicks-Washington v. Hous. Auth. of City of Fort Lauderdale*, 803 F. App'x 295, 300 (11th Cir. 2020) ("Prior to filing a Title VII action, a plaintiff first must file a charge of discrimination with the EEOC."). And, "[o]rdinarily, a party not named in the EEOC charge cannot be sued in a subsequent civil action." *Virgo v. Riviera Beach Assocs., Ltd.*, 30 F.3d 1350, 1358 (11th Cir. 1994). "This naming requirement is important, as it serves to notify the charged party of the allegations and allows the party an opportunity to participate in conciliation and voluntarily comply with the requirements of Title VII." *Equal Emp. Opportunity Comm'n v. Eberspaecher N. Am. Inc.*, 67 F.4th 1124, 1131 (11th Cir. 2023) (cleaned up).

We say "ordinarily" because there *is* a limited exception in circumstances where "the purposes of the act are fulfilled." *McClure v. Oasis Outsourcing II, Inc.*, 674 F. App'x 873, 874 (11th Cir. 2016). In determining whether a plaintiff qualifies for that exception, we look to several factors, including:

> (1) the similarity of interest between the named party and unnamed party; (2) whether the plaintiff could have ascertained the identity of the unnamed party at the time the EEOC charge was filed; (3) whether the unnamed parties received adequate notice of the charges; (4) whether the unnamed parties had an adequate opportunity to

participate in the reconciliation process; and (5) whether the unnamed party actually was prejudiced by its exclusion from the EEOC proceedings.

*Virgo*, 30 F.3d at 1359. Edmunds never even references this test, *see generally* Response—which is reason enough for us to find that she hasn't met the limited exception the Eleventh Circuit described in *Virgo* and *McClure*, *see United States v. Campbell*, 26 F.4th 860, 873 (11th Cir. 2022) ("[F]ailure to raise an issue in an initial brief . . . should be treated as a forfeiture of the issue, and therefore the issue may be raised by the court sua sponte [only] in extraordinary circumstances."); *Sappupo*, 739 F.3d at 681 ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority."); *Hamilton*, 680 F.3d at 1319 ("[T]he failure to make arguments and cite authorities in support of an issue [forfeits] it."); *In re Egidi*, 571 F.3d at 1163 ("Arguments not properly presented . . . are deemed [forfeited]."); *Timson*, 518 F.3d at 874 (11th Cir. 2008) ("While we read briefs filed by *pro se* litigants liberally, issues not briefed on appeal by a *pro se* litigant are deemed abandoned[.]" (cleaned up and first citing *Horsley*, 304 F.3d at 1131 n.1; and then citing *Lorisme*, 129 F.3d at 1444 n.3).

In any event, at least on this record, none of the *Virgo* factors favor Edmunds here. *First*, we know nothing at all about the corporate relationship (if one exists) between our various Asurion Defendants. *Second*, we don't know which Asurion entity Edmunds worked for, so we don't know whether Edmunds had some reason to identify these other entities when she filed her EEOC Charge. *Third* and *fourth*, we don't know if Asurion, LLC, or Asurion ET, AL knew (or had reason to know) about the EEOC Charge against Asurion Insurance Services—or whether these unnamed entities had the opportunity to take part in any reconciliation process. *Fifth*, we cannot say whether Asurion, LLC, and Asurion ET, AL were prejudiced by Edmunds's failure to name them in her EEOC Charge. Edmunds, in short, hasn't shown that, despite her failure to include Asurion, LLC, and Asurion ET, AL in her EEOC Charge, "the purposes of the act were fulfilled." *McClure*, 674 F. App'x at 875 (affirming the district court's grant of a motion to dismiss for failure to exhaust administrative

remedies where the plaintiff only named one of two defendants in her EEOC charge and "failed to demonstrate . . . that the purposes of the act were fulfilled"); *Lewis v. Asplundh Tree Expert Co.*, 402 F. App'x 454, 457 (11th Cir. 2010) ("Permitting Lewis to sue the City despite his failure to name it as a party in his EEOC charge would not further the purposes of Title VII. None of the factors weigh in Lewis' favor.").

And, as to *both* of these Defendants, it's now too late for Edmunds to remedy this deficiency because, to sue under Title VII in Florida,[9] a plaintiff must file a charge with the EEOC "within 300 days after the alleged unlawful practice occurred." 29 U.S.C. § 626(d); *see also E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1271 (11th Cir. 2002) ("For a charge to be timely in a deferral state such as Florida, it must be filed within 300 days of the last discriminatory act. Accordingly, only those claims arising within 300 days prior to the filing of the EEOC's discrimination charge are actionable."). As of this writing, more than *2,500 days* have passed since March 2017—when Edmunds's supervisor allegedly "made a racial comment to [her] in Chat," Am. Compl. at 5—and more than *1,500* days have elapsed since November 2019 (when Edmunds says she was fired, *see* EEOC Charge at 1 ("I was terminated on or about November 15, 2019.")). In other words, Edmunds's window to file an EEOC Charge about *any* of the conduct she's complaining about here has long since closed.

---

[9] "Florida is a 'deferral state,' which means that the state 'prohibits the unlawful employment practice at issue and has established state or local authorities to grant or seek relief for such practice.'" *Hernandez v. Palm Beach Cnty. Bd. of Cnty. Comm'rs*, 2021 WL 4459405, at *8 n.11 (S.D. Fla. Sept. 29, 2021) (Altman, J.) (cleaned up and quoting *Maynard v. Pneumatic Prods. Corp.*, 256 F.3d 1259, 1262–63 (11th Cir. 2001)). So, while a plaintiff must ordinarily "file a charge complaining about an allegedly unlawful employment practice . . . with the EEOC within 180 days of the employment practice, [in a deferral state] the period for filing a charge with the EEOC may be extended to 300 days." *Ibid.* (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002) ("In a State that has an entity with the authority to grant or seek relief with respect to the alleged unlawful practice, an employee who initially files a grievance with that agency must file the charge with the EEOC within 300 days of the employment practice; in all other States, the charge must be filed within 180 days. A claim is time barred if it is not filed within these time limits.")).

We therefore **GRANT** the Second MTD as to both Asurion, LLC, and Asurion ET, AL **with prejudice** and **without leave to amend**. Since Edmunds cannot *now* file a timely EEOC Charge as to these two Defendants, any amendment would be futile. *See Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007) ("Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant."); *see also Vanderberg v. Donaldson*, 259 F.3d 1321, 1326–27 (11th Cir. 2001) (affirming "the district court's permissible choice[ ]" to deny a motion for leave to amend where "the amendment was futile"); *Gill v. Bank of Am. Corp.*, 2015 WL 4349935, at *5 (M.D. Fla. July 14, 2015) (Polster Chapell, J.) ("Plaintiff's color discrimination claim does not fall within the scope of the EEOC Charge. This means she has to amend the EEOC Charge or file another charge of discrimination to assert color discrimination. However either option is foreclosed to Plaintiff because the time to amend or file another charge has lapsed. . . . As a result, the Court finds that amending the Complaint would be futile.").

That leaves only Asurion Insurance Services. We've already dismissed Edmunds's claims against this Defendant—*see ante*, at 10, 13–14—because she failed to serve it "within 90 days after the complaint [wa]s filed," FED. R. CIV. P. 4(m), and because she failed to serve "an agent authorized by appointment or by law to receive service on behalf of the partnership or association," TENN. R. CIV. P. 4.04(3). But, even if we hadn't done all that, Edmunds's claims against Asurion Insurance Services would fail because she missed the relevant statute of limitations.

As we've explained, Edmunds *did* file an EEOC Charge against this entity, and the Defendants haven't contested the timeliness of that Charge. *See* Second MTD at 13–14 (admitting that "Plaintiff filed a Charge against Asurion Insurance on March 24, 2020 and received her Right to Sue on November 23, 2021"—and *not* challenging the timeliness of that Charge). So far, so good. But Edmunds *didn't* sue this Defendant within "90 days after the giving of such notice[.]" 42 U.S.C. § 2000e–5(f)(1). The EEOC issued the Right-to-Sue Letter on November 23, 2021. *See* Right-to-Sue

Letter at 1 ("11/23/2021 Date Issued"). And Edmunds filed her lawsuit 85 days after the EEOC issued that Letter. *See generally* Compl. (filed on February 16, 2022). But, in that Complaint, she *only* sued Asurion, LLC.  *See id.* at 1. Edmunds didn't name Asurion Insurance Services as a Defendant in this case until she amended her complaint on April 21, 2022. *See generally* Am. Compl. (adding Asurion Insurance Services and Asurion ET, AL as Defendants). In other words, she didn't sue Asurion Insurance Services until some *five months* after the EEOC issued her Right-to-Sue Letter—despite her obligation to sue that entity within 90 days of receiving the Letter. *See* 42 U.S.C. § 2000e–5(f)(1). Because Edmunds failed to sue Asurion Insurance Services within 90 days of receiving her Right-to-Sue Letter, we agree with the Defendants that her claims against Asurion Insurance Services are time-barred.

True, Federal Rule of Civil Procedure 15 suggests that an otherwise-untimely amended pleading may "relate back" to the date of the original pleading. That may happen, for instance, when a plaintiff "changes the party or the naming of the party against whom a claim is asserted," if certain other criteria are satisfied. FED. R. CIV. P. 15(c)(1)(C). And that *may* be the situation we have here. We cannot answer that question definitively, however, because Edmunds never suggests that her Amended Complaint relates back to the original—and it's not our job to make arguments for her. While we treat *pro se* litigants with some leniency, "this leniency does not give a court license to serve as de facto counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action." *GJR Invs.*, 132 F.3d at 1369 (cleaned up).

We therefore (and for the third time) **GRANT** the Second MTD as to Asurion Insurance Services because Edmunds failed to sue this Defendant within the applicable statute of limitations. Still, we won't dismiss Edmunds's claims against Asurion Insurance Services *with* prejudice. Instead, we'll give Edmunds *one* final chance to amend her complaint against *that* Defendant. If she chooses to do so, however, she *must* explain how that second amended complaint—and the current Amended

Complaint—"relate[ ] back to the date of the original pleading" within the meaning of Rule 15(c)(1). She must, in other words, convince us that, "within the [original] period provided by Rule 4(m) for serving the summons and complaint," Asurion Insurance Services "received such notice of the action [against Asurion, LLC] that it will not be prejudiced in defending on the merits," and that Asurion Insurance Services "knew or should have known that the action [against Asurion, LLC] would have been brought against it, but for [Edmunds's] mistake concerning the proper party's identity." FED. R. CIV. P. 15(c)(1)(C).

## V. Judicial Estoppel

All that said, we reject the Defendants' contention that Edmunds is judicially estopped from filing these claims. *See* Second MTD at 7 (insisting that Edmunds's claims are barred by the doctrine of judicial estoppel because "[the] Plaintiff failed to disclose her claims against any Asurion entity – which she claims accrued five years ago – in the bankruptcy proceeding that she initiated just weeks before filing this lawsuit. As a result, she is judicially estopped from pursuing those claims now"). The Defendants concede (as they must) that Edmunds *has* amended her bankruptcy schedules "in response to and only <u>after</u> Asurion moved to dismiss her claims [the first time]." *Ibid.* But, they say, "the amendment does not properly identify her claims nor does it cure her failure to disclose them when she filed for bankruptcy." *Ibid.* We disagree.

"The purpose of judicial estoppel is 'to protect the integrity of the judicial process by prohibiting parties from changing positions according to the exigencies of the moment.'" *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1273 (11th Cir. 2010) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)). "Specifically, judicial estoppel is designed to prevent a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by the party in a previous preceding." *Ibid.* (cleaned up). "When a party does so, the doctrine of judicial estoppel allows a court to exercise its discretion to dismiss the party's claims." *Slater v. U.S. Steel Corp.*, 871 F.3d 1174, 1180 (11th Cir. 2017)

(citing *New Hampshire*, 532 U.S. at 750). Put simply, the doctrine of judicial estoppel "rests on the principle that 'absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory.'" *Id.* at 1181 (quoting *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 358 (3d Cir. 1996)).

"Our circuit employs a two-part test to guide district courts in applying judicial estoppel: whether (1) the party took an inconsistent position under oath in a separate proceeding, and (2) these inconsistent positions were calculated to make a mockery of the judicial system." *Ibid.* "Under this test, a district court considers *both* the plaintiff's actions—whether he made inconsistent statements— *and* his motive—whether he intended to make a mockery of the judicial system." *Ibid.* But we shouldn't apply judicial estoppel when a party's seemingly inconsistent positions stem from "inadvertence or mistake," because judicial estoppel "looks towards cold manipulation and not an unthinking or confused blunder." *Johnson Serv. Co. v. Transamerica Ins. Co.*, 485 F.2d 164, 175 (5th Cir. 1973) (cleaned up). Because we're not persuaded that Edmunds intended "to make a mockery of the judicial system," Second MTD at 9, we skip the first factor and (on the second) reject the Defendants' estoppel arguments.

"When the plaintiff's inconsistent statement comes in the form of an omission in bankruptcy disclosures, the court may consider such factors as the plaintiff's level of sophistication, whether and under what circumstances the plaintiff corrected the disclosures, whether the plaintiff told his bankruptcy attorney about the civil claims before filing the bankruptcy disclosures, whether the trustee or creditors were aware of the civil lawsuit or claims before the plaintiff amended the disclosures, whether the plaintiff identified other lawsuits to which he was party, and any findings or actions by the bankruptcy court after the omission was discovered." *Slater*, 871 F.3d at 1185. In assessing these factors, we must "consider the entire record and may infer from that record the party's intent[.]" *Harewood v. Miami-Dade Cnty.*, 780 F. App'x 748, 751 (11th Cir. 2019) (cleaned up).

At this stage of the case, however, our "entire record" is quite thin—just the pleadings and the motion-to-dismiss briefing. We're therefore uncomfortable finding—on this bare record—that Edmunds did (or didn't) *intend* something nefarious in a distant proceeding. And, indeed, "[a]s a general rule, a party's state of mind (such as knowledge or intent) is a question of fact for the factfinder, to be determined after trial." *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1476 (11th Cir. 1991); *see also Lord v. Univ. of Miami*, 2022 WL 18023293, at *11 (S.D. Fla. July 26, 2022) (Altonaga, C.J.) (declining to resolve a question of judicial estoppel, even at the summary-judgment stage, and noting that "[t]he existence of triable issues of fact concerning Plaintiff's intent is hardly surprising, because, generally speaking, a party's state of mind (such as knowledge or intent) is a question of fact for the factfinder, to be determined at trial"); *In re Kourogenis*, 539 B.R. 625, 630 (Bankr. S.D. Fla. 2015) (Olson, J.) ("Judicial estoppel has traditionally been applied to fact questions: Was the light red or green? Can the accident victim raise his arm above his head, or not?"). Like our colleagues before us, in sum, we think it premature to resolve this fact-intensive question at this early phase of the case.

Indeed, even looking at the factors the Eleventh Circuit outlined in *Slater*, we see little reason to find estoppel here—at least not yet. *First*, Edmunds's filings don't suggest that she's particularly sophisticated in the law. Her Response, for instance, is a two-page document that includes no legal citations and, instead, invokes Edmunds's "God-fearing Christian" moral code as proof that she "would never deceive the judicial system[.]" Response at 2. She's also repeatedly sued the wrong entity and, as we've detailed, failed to serve anyone properly. We therefore reject the Defendants' conclusory view that "there is no evidence that Plaintiff is unsophisticated[.]" Second MTD at 9. *Second*, as the Defendants concede, Edmunds has made *some* effort to correct her disclosures, "albeit [in a way that's] incomplete and inaccurate[.]" *Id.* at 10. *Third*, we don't know whether Edmunds told her bankruptcy lawyer about her civil claims. We thus cannot say *who* omitted the information and why. *Fourth*, we don't know if the trustee (or the creditors) were aware of Edmunds's civil lawsuit before she amended

her disclosures. *Fifth*, we don't know what findings, if any, the bankruptcy court has made with respect to any omissions in Edmunds's filings. We cannot, in short, accept the Defendants' (conclusory) accusation that Edmunds has intentionally made a mockery of the judicial system—at least not without some more proof. And, without such a finding, we cannot estop Edmunds from asserting her claims here. *See Slater*, 871 F.3d at 1176 ("[A] district court may apply judicial estoppel to bar the plaintiff's civil claim if it finds that the plaintiff intended to make a mockery of the judicial system."). We therefore **DENY** this part of the Second MTD.

### VI.    The Merits

On the merits, Edmunds has failed to plead any plausible cause of action.[10]

"To make out a *prima facie* case of racial discrimination a plaintiff must show (1) she belongs to a protected class; (2) she was qualified to do the job; (3) she was subjected to adverse employment action; and (4) her employer treated similarly situated employees outside her class more favorably." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008) (citing *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003) (per curiam)). And a *prima facie* case of retaliation under Title VII "requires the plaintiff to show that: (1) she engaged in an activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." *Ibid.* (citing *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001)). "A plaintiff making a retaliation claim under [Title VII] must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Tex. S.W. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013).

---

[10] The Defendants think that Edmunds probably intended to advance a retaliation claim—though they acknowledge that she also checked the "termination" box when she identified, in her Amended Complaint, the type of discrimination she'd experienced. *See* Second MTD at 15 n.4. They, therefore, addressed her claim as *both* one for wrongful termination *and* one for retaliation. We think that approach makes sense.

We'll start with discrimination. Edmunds hasn't alleged that "her employer treated similarly situated employees outside her class more favorably." Am. Compl. at 5 (failing to make any factual allegations about disparate treatment); *cf. Crawford*, 529 F.3d at 970 ("To make out a *prima facie* case of racial discrimination a plaintiff must show . . . her employer treated similarly situated employees outside her class more favorably."). In other words, if we're supposed to interpret Edmunds's claim as one for discriminatory termination, she's pled no facts that would allow such a claim to survive. *See, e.g.*, *Hopkins v. St. Lucie Cnty. Sch. Bd.*, 399 F. App'x 563, 566 (11th Cir. 2010) (affirming dismissal for failure to state a claim when the plaintiff "provided no facts that would allow a court to infer that the school district treated those outside the class of African-American males more favorably"—and noting that, as here, the complaint consisted of "conclusory allegations of discrimination and fail[ed] to provide, as required by *Twombly* and *Iqbal*, the sufficient factual matter to establish a prima facia case").

On retaliation, the Defendants' Motion focuses (rightly) on whether Edmunds has adequately pled the third element of that claim—*i.e.*, a causal link between her complaints and her termination. "To establish a causal connection, a plaintiff must show that the decision-makers were aware of the protected conduct, and that the protected activity and the adverse action were not wholly unrelated." *Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002) (citing *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 590 (11th Cir. 2000)). Put differently, the plaintiff must show (1) that the person who terminated her knew about the protected conduct and (2) "that there was a close temporal proximity between this awareness and the adverse . . . action." *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1377 (11th Cir. 1999). A "close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence[.]" *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000). "But mere temporal proximity, without more, must be 'very close.'" *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007).

Edmunds has failed to allege *any* facts that might allow us to find the necessary proximity here. Edmunds, remember, claims that she was terminated in November 2019. *See* EEOC Charge at 1 ("I was terminated on or about November 15, 2019."). But she also says that she was fired because of complaints she voiced about racial discrimination after "a Supervisor (Cindy Sandoval) made a racial comment to me in Chat, in March of 2017." Am. Compl. at 5. And she's made no effort—either in her Amended Complaint or in her Response—to bridge that two-and-a-half-year gap. This omission is particularly striking because the Defendants specifically raised this issue in their motion. *See* Second MTD at 16 ("Plaintiff's claims are based on her egotistical perception that she was terminated because of her complaints, but she fails to describe any comments, behavior, or actions by the Asurion parties (other than the termination itself) that causally connects her complaint of discrimination to her termination.").

By failing to acknowledge—let alone oppose—those arguments in her Response, *see generally* Response (completely ignoring the Defendants' 12(b)(6) arguments), she's forfeited any such opposition here, *see Campbell*, 26 F.4th at 873 ("[F]ailure to raise an issue in an initial brief . . . should be treated as a forfeiture of the issue, and therefore the issue may be raised by the court sua sponte [only] in extraordinary circumstances."); *Sappupo*, 739 F.3d at 681 ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority."); *Hamilton*, 680 F.3d at 1319 ("[T]he failure to make arguments and cite authorities in support of an issue waives it."); *In re Egidi*, 571 F.3d at 1163 ("Arguments not properly presented . . . are deemed waived."); *Timson*, 518 F.3d at 874 ("While we read briefs filed by *pro se* litigants liberally, issues not briefed on appeal by a *pro se* litigant are deemed abandoned[.]" (cleaned up)).

Nor was there much Edmunds could have done with a 30-month gap between her complaints and her termination. *See, e.g., Brisk v. Shoreline Found., Inc.*, 654 F. App'x 415, 417 (11th Cir. 2016)

(finding "no causal connection" because the "temporal proximity of four months was tenuous"); *Williams v. Waste Mgmt., Inc.*, 411 F. App'x 226, 229–30 (11th Cir. 2011) ("A three to fourth month gap is insufficiently proximate to establish causation."); *Wills v. Walmart Assocs., Inc.*, 592 F. Supp. 3d 1203, 1234 (S.D. Fla. 2022) (Altman, J.) ("As to proximity, it's not entirely clear that the two-month gap between leave and termination is 'close' enough to establish a *prima facie* case."). Because Edmunds hasn't alleged *either* disparate treatment (for her race discrimination claim) *or* causation (for her retaliation claim), we **GRANT** this final part of the Second MTD.

***

As we've explained above, we're dismissing Edmunds's claims against Asurion, LLC, and Asurion ET, AL *with* prejudice and *without* leave to amend. Edmunds never filed an EEOC Charge against Asurion, LLC, and the time to do so has long since passed. *See Joe's Stone Crabs, Inc.*, 296 F.3d at 1271 ("For a charge to be timely in a deferral state such as Florida, it must be filed within 300 days of the last discriminatory act. Accordingly, only those claims arising within 300 days prior to the filing of the EEOC's discrimination charge are actionable."); *see also* Am. Compl. at 5 (alleging that Edmunds's supervisor "made a racial comment to [her] in Chat, in March of 2017"); EEOC Charge at 1 ("I was terminated on or about November 15, 2019."). Far more than 300 days have passed since *either* the alleged racial comment *or* Edmunds's termination, and Edmunds cannot cure that timeliness problem now—so any amended complaint would be futile. As for Asurion ET, AL, it simply isn't a real entity, and no amendment can change that. Nor, as we've shown, has Asurion ET, AL been properly served—and the time to do so has long since passed. *See* Fed. R. Civ. P. 4(m) (requiring the plaintiff to serve each defendant "within 90 days after the complaint is filed."). Because any amended complaint against these Defendants would be futile, we won't give Edmunds a *third* bite at the apple. *See Cockrell*, 510 F.3d at 1310 ("Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant.");

*Gill*, 2015 WL 4349935, at *5 ("Plaintiff's color discrimination claim does not fall within the scope of the EEOC Charge. This means she has to amend the EEOC Charge or file another charge of discrimination to assert color discrimination. However either option is foreclosed to Plaintiff because the time to amend or file another charge has lapsed. . . . As a result, the Court finds that amending the Complaint would be futile.").

As for Asurion Insurance Services, though, we'll give Edmunds *one* last try. If she chooses to amend her complaint, she must remedy all the deficiencies we've identified in this Order. In particular, she must (1) fix the shotgun-pleading problems we've outlined; (2) properly and timely serve Asurion Insurance Services in conformity with Federal Rule of Civil Procedure 4; (3) establish that her amended complaint relates back to the date of the original complaint under Rule 15; and (4) show that she's entitled to relief on her discrimination and retaliation claims. If she fails to remedy these deficiencies, we will dismiss her claims *with* prejudice.

## CONCLUSION

After careful review, therefore, we hereby **ORDER and ADJUDGE** as follows:

1. The Second MTD [ECF No. 27] is **GRANTED**.

2. The Amended Complaint [ECF No. 24] is **DISMISSED with prejudice** as to Asurion LLC and Asurion ET, AL.

3. The Amended Complaint is **DISMISSED without prejudice** as to Asurion Insurance Services. Edmunds must file her amended complaint against this Defendant (and no other Defendants) by **March 13, 2024**.

**DONE AND ORDERED** in the Southern District of Florida on February 13, 2024.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:    counsel of record